IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 26, 2002

## JOHN WAYNE GRAY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Franklin County**
**No. 12175      Buddy D. Perry, Judge**

———————————

### No. M2001-03090-CCA-R3-PC - Filed May 7, 2003

———————————

The petitioner, John Wayne Gray, appeals the Franklin County Circuit Court's denial of post-conviction relief from his conviction for the sale of a Schedule II controlled substance. On appeal, the petitioner claims that he received ineffective assistance of counsel. Following a review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Glen A. Isbell, Winchester, Tennessee, for the appellant, John Wayne Gray.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I.  Factual Background

On April 28, 1999, the petitioner was convicted of sale of a Schedule II controlled substance. The trial court imposed a sentence of thirteen years incarceration in the Tennessee Department of Correction. On direct appeal, this court affirmed the petitioner's conviction and sentence. See State v. John Wayne Gray, No. M1999-01615-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 585 (Nashville, July 28, 2000). In reviewing the petitioner's post-conviction claim, we briefly summarize the pertinent facts.

The proof in this matter showed that on April 8, 1998, the petitioner sold crack cocaine to undercover drug enforcement officers. The transaction was recorded on audio and video tapes which were reviewed by the jury at trial. During the presentation of the State's case, testimony revealed that there had been a delay of fourteen days between the time the packaged cocaine evidence was delivered to United Parcel Service (UPS) for shipping and the date the evidence was

received at the Tennessee Bureau of Investigation (TBI) crime laboratory in Chattanooga. Testimony at trial established that normal shipping time from Winchester to Chattanooga was one day.

At the conclusion of the State's proof, the petitioner moved for a judgment of acquittal, arguing that the State had failed to establish an unbroken chain of custody of the evidence. The trial court overruled the motion, but allowed the State to reopen its proof to present the testimony of Winchester Police Sergeant John Stewart regarding the tracking number given to him by Patricia Pickett, an employee of the Herald Chronicle, the shipping agent for UPS. The State also presented the testimony of Pickett, who recalled that on April 14, 1998, she received the box of evidence from Sergeant Stewart. Pickett testified that she assigned the box a tracking number and stored the box until giving it to UPS for shipping later that day. According to Pickett, the box showed no signs of tampering.

Following his conviction, the petitioner raised the chain of custody issue on direct appeal. This court concluded that the trial court properly denied the petitioner's motion for judgment of acquittal, specifically stating:

> [W]e conclude that the trial court did not abuse its discretion in ruling that the identity and integrity of the evidence had been sufficiently established. Although the UPS employees who handled the package did not testify, and Raymond Siler who received the package for the TBI did not testify, there was no evidence that the package had been tampered with between the time it left Ms. Pickett's possession when she turned it over to UPS and the time Ms. Darter retrieved the package for testing. . . . While the Defendant points out that it took two weeks for UPS to deliver the package to the TBI when it should have only taken a day, that time period does not establish that the package had been tampered with.

Gray, No. M1999-01615-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 585, at \*\*17-18.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel at trial and on appeal. Specifically, the petitioner alleged that

(1) trial counsel failed to move to quash the jury venire;

(2) trial counsel failed to interview and subpoena witnesses who could testify to the identity and integrity of the evidence;

(3) trial counsel failed to "give Petitioner his assessment of the evidence against him" and failed to inform the petitioner of the applicable law; and

(4) appellate counsel failed to properly brief the issues, depriving the petitioner of meaningful appellate review.

The post-conviction court appointed counsel to represent the petitioner and scheduled an evidentiary hearing, at which the petitioner, his trial counsel, and his appellate counsel testified.

At the evidentiary hearing, the petitioner asserted that trial counsel should have moved to quash the jury venire. The petitioner testified that he had been "looking through law books while [he] was incarcerated" and realized that "there's suppose to be a fair cross of section of the jury and mine was all white." However, the petitioner conceded that he had no proof that the racial makeup of the jury affected the verdict.

The petitioner further alleged that trial counsel did not provide the petitioner an opportunity to accept a plea agreement offered by the State and failed to advise him of the strength of the State's case. The petitioner testified that when he spoke with trial counsel on "discussion day," counsel advised him that the State had lost the evidence against him. He asserted that trial counsel then "sent [the petitioner] home because the court hearing was postponed because the evidence was not there." The petitioner acknowledged that he did not listen to or view the audio and video tapes of the drug transaction, stating, "I really didn't want to see it. I was under the impression that if they had lost the evidence that the case was supposed to be dismissed." The petitioner explained that he decided to go to trial after trial counsel told him that the evidence had been lost. The petitioner testified, "I thought that the evidence was lost . . . and from my understanding, if the chain hadn't been met then the evidence is insufficient due to the chain being broken." He asserted that if he had known that the evidence was not lost, he would have accepted the State's offer of a six year sentence and a fine of $3000.

The petitioner alleged that at trial his defense was "that the chain [of custody] had been broken." He maintained that his trial counsel should have subpoenaed the "UPS man" to explain the fourteen day delay in delivering the evidence to the TBI crime laboratory in Chattanooga. The petitioner also asserted that trial counsel should have subpoenaed "the manager from the TBI Crime Lab who signed for the dope when it got there to explain the protocol or what shape it was in or whatever." The petitioner testified that after learning that the evidence was lost, he asked trial counsel to file a motion to suppress the evidence, but trial counsel refused and sent the petitioner home.

Additionally, the petitioner contended that the prosecutor was guilty of misconduct. He alleged that the prosecutor "coached" witnesses, allowed false and misleading evidence to be presented, and asked leading questions. However, the petitioner was unable to provide specific examples to support these allegations, stating, "I can only give it to you how I seen it and how I feel that this happened."

Finally, the petitioner alleged that his appellate counsel failed to properly brief the issue regarding the chain of custody. The petitioner's sole contention was that appellate counsel should have emphasized the trial court's error in allowing the State to present the additional testimony of Sergeant Stewart and Patricia Pickett. However, other than a general allegation regarding his claim, the petitioner did not pursue this issue at the post-conviction hearing.

The petitioner conceded that he did not arrive on time for his trial and that following the lunch break he failed to return to court. The petitioner testified that he failed to return to court because his attorney advised him that he could leave.

The petitioner's trial counsel was the next witness to testify at the evidentiary hearing. He related that after being appointed to represent the petitioner, he met with the petitioner and recommended that, "in light of his record and the potential chance he was taking and that they did, in fact, have video and audio," the petitioner should accept the State's plea offer. He also scheduled an appointment to meet the petitioner and review the audio and video tapes of the drug transaction, but the petitioner failed to keep the appointment. Trial counsel stated that he did not tell the petitioner that the evidence was lost. Moreover, he was unable to discuss the case with the petitioner because the petitioner could not be located. Trial counsel testified that he and his staff spent two days searching for the petitioner and did not expect the petitioner to appear for trial. Trial counsel stated that preparing a defense was difficult due to the overwhelming evidence against the petitioner, which evidence included an audio and video tape, the testimony of two undercover agents, and positive lab results. Additionally, the petitioner did not cooperate or communicate with trial counsel.

Trial counsel conceded that the chain of custody issue arose during trial; however, he asserted that the petitioner did not request that he subpoena any witnesses to testify on the issue, explaining that the petitioner was not even present during that portion of the trial. Trial counsel further explained that there was no indication that the evidence had been tampered with and that when he became aware of the delay in shipping, he raised the issue of the time gap. Trial counsel related that he was not surprised by the testimony of Pickett and did not think that a recess or continuance was necessary. Moreover, trial counsel testified that he did not interview or subpoena witnesses prior to trial regarding the chain of custody issue because establishing an unbroken chain of custody was the obligation of the State and his policy was not to call witnesses who were beneficial to the State.

The petitioner's appellate counsel testified briefly at the evidentiary hearing. She stated that she assisted the petitioner's lead counsel at trial and represented the petitioner at the sentencing hearing and on the motion for new trial. On appeal, appellate counsel raised the chain of custody issue and addressed the issue of the trial court allowing the State to reopen its case to present additional testimony. She chose to address the issue of the additional testimony as part of her argument regarding the chain of custody. She made this decision based upon her participation in the trial and her subsequent review of the trial transcript.

The post-conviction court found the petitioner's claim to be without merit and noted the petitioner's failure to cooperate with counsel, stating that "[t]he ineffective assistance of counsel issue probably needs to be turned around and stated as ineffective assistance of defendant issue." The post-conviction court recalled that on the day of trial the defendant arrived for trial thirty minutes late and failed to return after the lunch break. Additionally, the post-conviction court noted the petitioner's testimony that trial counsel came to the petitioner's home on two occasions to discuss the State's plea offers.

The post-conviction court addressed its decision to allow the State to present additional testimony regarding the chain of custody issue, explaining that when the petitioner failed to return for trial, the court was being "abundantly cautious" to ensure that all the evidence was presented. The post-conviction court concluded:

> [T]his post-conviction action doesn't border on being frivolous, it is completely frivolous. It's the kind of case that causes the public to look at the judicial system and wonder what are those people doing. Why are judges and DAs and public defenders spending time on issues in cases when you've got a defendant that really makes no effort to help himself. He doesn't show up for a viewing of the tapes, he doesn't get to trial on time, he doesn't stay for the whole trial and then he wants to complain I didn't get fair help from my counsel. This is not a case about ineffective assistance of counsel, it's a case about ineffective assistance of the defendant, and I'm denying the [petition].

## II. Analysis

In appealing the post-conviction court's denial of relief, the petitioner again contends that he received ineffective assistance of counsel at trial.[1] Specifically, the petitioner alleges that trial counsel failed to inform the petitioner of all the evidence against him, failed to interview witnesses, failed to develop a defense, and failed to "file any motions to suppress due to the evidence being lost."

In order to establish that these omissions by his trial counsel violated the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution, the petitioner must demonstrate both that the omissions constituted deficient performance and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996).

Constitutionally deficient performance is representation below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88; 104 S. Ct. at 2064-65; see also Burns, 6 S.W.3d at 462. More specifically, a petitioner must demonstrate that his counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In determining whether a petitioner has satisfied his burden, a court should refrain from second-guessing tactical and strategic decisions by defense counsel. Henley, 960 S.W.2d at 579. Rather, the court should defer to such decisions if they are based upon adequate preparation. See Burger v. Kemp, 483 U.S. 776, 794-95, 107 S. Ct. 3114, 3126 (1987); see also Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

---

[1] Although the petitioner challenged the effectiveness of appellate counsel in his petition for post-conviction relief and raised the issue only as a general allegation at the evidentiary hearing, the issue was not raised on appeal.

Ultimately, the primary concern of the court should be "'the fundamental fairness of the proceeding whose result is being challenged.'" State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988) (quoting Strickland, 466 U.S. at 696, 104 S. Ct. at 2069). Thus, as previously noted, a petitioner must demonstrate prejudicial, as opposed to merely deficient, performance by counsel. In other words, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. Henley, 960 S.W.2d at 579. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

A post-conviction court's determination of whether counsel's performance was deficient and whether that deficiency was prejudicial are conclusions of law that this court reviews "under a purely de novo standard, with no presumption of correctness." Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). That having been said, in reaching these conclusions of law, the post-conviction court must determine whether the petitioner has proven by clear and convincing evidence any factual findings underlying his claim of ineffective assistance of counsel. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court's factual findings are binding upon this court unless the evidence preponderates otherwise. Fields, 40 S.W.3d at 458; see also Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley, 960 S.W.2d at 578. Thus, questions concerning the credibility of witnesses and the weight and value of their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

Examining the post-conviction court's findings in accordance with the above standards, we conclude that the court correctly determined the petitioner's claim to be without merit. As noted by the post-conviction court, the petitioner testified at the evidentiary hearing that he was aware of the audio and video tapes of the drug transaction. However, he chose not to view the tapes with his trial counsel because he "didn't want to see it." The petitioner further testified that trial counsel visited his home on at least two occasions to discuss the evidence and a proposed plea agreement.

Trial counsel testified at the post-conviction hearing that he strenuously objected to the trial court's decision to allow the testimony of Sergeant Stewart and Patricia Pickett. Review of the trial transcript confirms trial counsel's testimony. Moreover, trial counsel testified that the petitioner was not present during this portion of the trial. Because he was not surprised by the witnesses' testimony, trial counsel did not ask the court for a continuance. As to his decision to forego calling witnesses to testify regarding the chain of custody issue, trial counsel explained that he made a strategic decision to not call witnesses who would benefit the State. Instead, he chose to emphasize the weakness in the chain of custody through cross-examination of the State's witnesses. Trial counsel stated that he never told the petitioner that the State had lost the evidence, noting that his communication with the petitioner was limited due to his inability to locate the petitioner.

As previously noted, this court will not "second-guess" the tactical and strategic decisions of counsel, particularly where there has been no evidence presented to show that such a decision amounts to deficient representation. We agree with the post-conviction court that trial

-6-

counsel's ability to represent the petitioner was hampered by the petitioner's total lack of cooperation, which is highlighted by his tardy appearance at trial and his disappearance during the trial.

Because the petitioner has failed to demonstrate deficient performance on the part of trial counsel, we need not address the prejudice prong.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE